NO. 2015-1565

_____

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

_____

SCRIPTPRO, LLC AND SCRIPTPRO USA, INC.,

*Plaintiffs-Appellants*,

v.

INNOVATION ASSOCIATES, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the District of Kansas
in Case No. 06-cv-2468, Judge Carlos Murguia

_____

## PRINCIPAL BRIEF OF DEFENDANT-APPELLEE
## INNOVATION ASSOCIATES, INC.

_____

B. Trent Webb
Angel D. Mitchell
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108-2613
Phone:  (816) 474-6550
Fax:  (816) 421-5547

*Attorneys for Defendant-Appellee*
*Innovation Associates, Inc.*

October 13, 2015

# CERTIFICATE OF INTEREST

Counsel for Appellee Innovation Associates, Inc. certifies the following:

1. The full name of every party or amicus represented by me is:

   Innovation Associates, Inc.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

   Identified Above.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   No parent corporation or any publicly held company owns 10% or more of the stock of Innovation Associates, Inc.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are as follows:

   B. Trent Webb, Angel D. Mitchell, Christine A. Guastello, Christopher S. Dove, and Brittany A. Boswell of Shook, Hardy & Bacon, LLP; Douglas M. Greenwald of McAnany, Van Cleave & Phillips, P.A.; Carlos Perez-Albuerne, Michael E. Murawski, E. Page Wilkins, Dana L. Popkave, and Kathleen B. Shields of Choate, Hall & Stewart LLP; and Mark Levy of Hinman Howard & Kattell, LLP.

October 13, 2015        _/s/ Angel D. Mitchell_____
Date                Angel D. Mitchell

# **TABLE OF CONTENTS**

CERTIFICATE OF INTEREST .................................................................. i

STATEMENT OF RELATED CASES ................................................ 1

STATEMENT OF THE ISSUE................................................................ 2

STATEMENT OF THE CASE.................................................................. 3

STATEMENT OF FACTS ........................................................................ 5

I.    ScriptPro Has Stressed and Embraced the Patient-Specific Organization
      Scheme As a Primary Goal of the Invention .................................... 6

      A.    During the First Appeal, ScriptPro Downplayed the
            Importance of Slot-Checking Sensors by Stressing Patient-Specific
            Collation As a Central Purpose of the Invention ................................. 6

      B.    On Remand, ScriptPro Embraced the Patient-Specific
            Storage Functionality ......................................................... 9

II.   The Specification Unambiguously Limits the Invention to a Patient-
      Specific Organization Scheme That Uses Patient-Identifying
      Information ..................................................................... 13

      A.    The Background of the Invention Disparages Prior Art
            Organizational Schemes That Lacked Patient-Specific Collation ..... 13

      B.    The Specification Repeatedly Discloses Patient-Specific Collation . 15

      C.    The Claims Do Not Include Any Component With
            "Memory" and ScriptPro Does Not Argue Otherwise....................... 19

SUMMARY OF ARGUMENT ........................................................... 20

ARGUMENT .................................................................... 23

I.    Legal Standards ................................................................ 23

      A.    Standard of Review ......................................................... 23

      B.    Legal Standard for Lack of Written Description................................ 24

II.   The District Court Properly Determined That the Asserted Claims,
      Which Lack Any Particular Type of Organizational Scheme, Are
      Not Supported by the More Limited Patient-Specific Collation Described
      in the Specification ...................................................................................... 25

      A.    This Court's Precedent Prohibits Broad Claims That are Not
            Commensurate With the Invention That is More Narrowly
            Described in the Specification.............................................................. 25

      B.    The Entirety of the Specification Indicates That Patient-Specific
            Collation is An Essential Part of the Invention.................................... 27

      C.    ScriptPro's Overly Broad Claims Have Unfair Breadth That the
            Written Description Requirement is Designed to Prevent ................. 29

            1.    The Breadth of the Claims is Not Commensurate
                  With the Contribution to the Field of the Invention ................ 29

            2.    The Claims are So Broad That They Cover Prior Art the
                  Inventors Disparaged ................................................................ 31

III.  ScriptPro's Newfound Arguments, Not Raised Before the District
      Court, Do Not Rectify the Deficiencies the District Court Properly
      Identified ..................................................................................................... 32

      A.    ScriptPro Embraced the Invention's Patient-Specific Storage
            Functionality Without Debating Immaterial Semantics About
            Storage by "Patient Name" or Some Other Patient Identifier............ 34

      B.    The Claimed "Collating Unit" Does Not Require the Patient-
            Specific Collation That Is An Essential Part of the Invention........... 37

            1.    Before the District Court, ScriptPro Chose to Argue
                  That the Patient-Specific Storage Functionality is Inherent
                  in Memory, Which is Inherent in a Computing Device,
                  Which is Inherent in the Recited Control System ................... 38

            2.    ScriptPro's New Argument That "Collating Unit" Alone
                  Sufficiently Limits the Claims Was Not Before the
                  District Court and is Unsupportable Regardless..................... 40

3.    Despite This Court's and Innovation's Express
Invitation Regarding Claim Construction, ScriptPro Chose Not
to Seek a Revised Claim Construction ..................................... 42

IV.    ScriptPro Failed to Raise Its "Original Claims" Argument Before
the District Court, and the Original Claims are Insufficient in Any Event .. 44

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ............................. 46

CERTIFICATE OF SERVICE ................................................................ 49

CERTIFICATE OF COMPLIANCE ....................................................... 50

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ariad Pharms., Inc., v. Eli Lilly & Co.,*
598 F.3d at 1336, 1351 (Fed. Cir. 2010) .....................................................24, 29

*Atl. Research Mktg. Sys. v. Troy,*
659 F.3d 1345 (Fed. Cir. 2011) ...........................................................................23

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.),*
687 F.3d 1266 (Fed. Cir. 2012) ...........................................................................43

*Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.,*
541 F.3d 1115 (Fed. Cir. 2008) ...........................................................................24

*Cemex, S.A. v. United States,*
133 F.3d 897 (Fed. Cir. 1998) ......................................................................33, 45

*Centocor Ortho Biotech, Inc. v. Abbott Labs.,*
636 F.3d 1341 (Fed. Cir. 2011) ...........................................................................25

*Cooper Cameron Corp. v. Kvaerner Oilfield Prod., Inc.,*
291 F.3d 1317 (Fed. Cir. 2002) .....................................................................25, 40

*Gentry Gallery, Inc. v. Berkline Corp.,*
134 F.3d 1473 (Fed. Cir. 1998) ...........................................................................25

*ICU Medical, Inc. v. Alaris Med. Sys., Inc.,*
558 F.3d 1368 (Fed. Cir. 2009) ...........................................................................26

*Israel Bio-Eng'g Project v. Amgen, Inc.,*
475 F.3d 1256 (Fed. Cir. 2007) ......................................................................33, 45

*Leveraged Innovations, LLC v. NASDAQ OMX Group, Inc.,*
No. 11 Civ. 3203, 2013 WL 441051 (S.D.N.Y. Jan. 28, 2013) ........................47

*LizardTech, Inc. v. Earth Res. Mapping, Inc.,*
424 F.3d 1336 (Fed. Cir. 2005) .....................................................................26, 45

*Lockwood v. Am. Airlines, Inc.,*
107 F.3d 1565 (Fed. Cir. 1997) ...........................................................................24

*Maytag Corp. v. Elextrolux Home Products., Inc.,* 448 F. Supp. 2d 1034
(N.D. Iowa 2006), *aff'd*, 224 Fed. Appx. 972 (Fed. Cir. 2007) .......................31

*NTP, Inc. v. Research in Motion, Ltd.,*
418 F.3d 1282 (Fed. Cir. 2005) ...........................................................43

*Otsuka Pharm. Co., Ltd. V. Sandoz, Inc.,*
678 F.3d 1280 (Fed. Cir. 2012) ...........................................................43

*Phillips v. AWH Corp.,*
415 F. 3d 1303 (Fed. Cir. 2005) ..........................................................44

*Sage Prods, Inc. v. Devon Indus., Inc.,*
126 F.3d 1420 (Fed. Cir. 1997) .....................................................33, 45

*ScriptPro, LLC v. Innovation Associates, Inc.,*
762 F.3d 1355 (Fed. Cir. 2014) ....................... 1, 8, 19, 27, 29, 32, 38, 42, 44, 45

*SmithKline Beecham Corp. v. Apotex Corp.,*
439 F.3d 1312 (Fed. Cir. 2006) ...........................................................43

*Tronzo v. Biomet, Inc.,*
156 F.3d 1154 (Fed. Cir. 1998) .....................................................26, 31

*Univ. of Rochester v. G.D. Searle & Co., Inc.,*
358 F.3d 916 (Fed. Cir. 2004) ............................................................25

*Vizio, Inc. v. Intl. Trade Comm.,*
605 F.3d 1330 (Fed. Cir. 2010) ...........................................................41

*Wang Labs., Inc. v. Mitsubishi Electronics Am., Inc.,*
103 F.3d 1571 (Fed. Cir. 1997) ...........................................................35

## STATUTES

35 U.S.C. § 112, ¶ 1 .................................................................3, 24, 48

## OTHER AUTHORITIES

FED. R. CIV. P. 56(a)...................................................................23

FED. R. APP. P. 32(a)(7)(B)(i) ........................................................49

FED. R. APP. P. 32(a) (7)(B)(iii) .....................................................49

## STATEMENT OF RELATED CASES

Innovation Associates, Inc. ("Innovation") is aware of a single appeal from the same civil action that was previously before any appellate court.  That appeal in this Court titled *ScriptPro, LLC v. Innovation Associates, Inc.* was docketed as Appeal No. 2013-1561.  The Court's decision can be found at *ScriptPro, LLC v. Innovation Associates, Inc.*, 762 F.3d 1355 (Fed. Cir. 2014).  Innovation knows of no other case pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal.

## STATEMENT OF THE ISSUE

Did the district court properly grant summary judgment that the asserted claims of U.S. Patent No. 6,910,601 ("the '601 patent") lack written description support where Appellants ScriptPro, LLC and ScriptPro USA, Inc. (collectively "ScriptPro") repeatedly stressed and embraced the invention's goal to automate patient-specific storage of prescription containers by associating containers with particular patients and automatically collating multiple containers for a patient within the same slot, thus allowing for easier and more accurate retrieval of a particular patient's containers, even though the asserted claims are not limited to a collating unit configured to keep track of what slots are being used by particular patients; rather, they broadly claim a collating unit that can store prescription containers based on any organizational scheme, including schemes in the prior art that the patent disparages as being contrary to the central purpose of the invention?

## STATEMENT OF THE CASE

ScriptPro asserts that Innovation infringes the '601 patent, which is entitled "Collating Unit for Use With a Control Center Cooperating With an Automatic Prescription or Pharmaceutical Dispensing System." (A2603.) ScriptPro asserts that Innovation infringes claims 1, 2, 4, and 8 of the '601 patent. (A2604 ¶ 4(a)(9).) Each of these claims is broadly directed to a collating unit that automatically stores prescription containers dispensed by an automatic dispensing system ("ADS"). (A79, A83.) They are not limited to keeping track of what slots are open and what slots are being used for a particular customer. (*Id.*)

After this case was previously remanded to the district court, Innovation moved for summary judgment pursuant to 35 U.S.C. § 112, ¶ 1, that the asserted claims are invalid because the specification does not provide written description support for claims broadly directed to a collating unit that is not limited to "the central purpose of the invention" that ScriptPro stressed on appeal, which is keeping "track of what slots are open and what slots are being used for a particular customer." (A5185.) Innovation argued that the specification of the '601 patent unambiguously limits the way in which the collating unit achieves storage of prescription containers—namely, "patient-specific collating"—yet the asserted claims lack any limitation for achieving storage in this fashion. (A5190-A5193.)

The district court agreed, finding that "the '601 patent's specification limits how the invention automatically stores prescription containers," but that "the claims do not limit the ways in which the prescription containers are stored. They do not specify any type of collation or storage." (A8.) The court further reasoned that ScriptPro repeatedly emphasized on appeal that a central purpose of the '601 patent is "to 'keep[] track of slot use by particular customers and slot availability.'" (A9.) The court found it "disingenuous for ScriptPro to now downplay the significance of the goal" it repeatedly emphasized on appeal. (A9.) Thus, the court found that the "broad claims are not supported by the much-more-limited specification." (A9.) The court therefore granted summary judgment of invalidity. (A10.) ScriptPro now appeals that judgment.

## STATEMENT OF FACTS

ScriptPro alleges that Innovation infringes claims 1, 2, 4, and 8 of the '601 patent.  (A2604 ¶ 4(a)(9).)  ScriptPro maintains that claim 8 is representative.[1] (ScriptPro Br. at 7-8.)  It is broadly directed to "[a] collating unit for automatically storing prescription containers dispensed by an [ADS]."  (A79.)  It recites conveyors for transporting containers away from the ADS and into holding areas formed within a frame that overlies the conveyors, guide arms to maneuver the containers into the holding areas, and a control system to control operation of the conveyors and guide arms.  (A79.)  This is illustrated in Figure 1 (A65):



FIG. 1

---

[1] For purposes of the issues presented on this appeal, claims 1, 2, and 4 (A83) are materially identical and Innovation agrees that claim 8 is representative.

## I. ScriptPro Has Stressed and Embraced the Patient-Specific Organization Scheme As a Primary Goal of the Invention

### A. During the First Appeal, ScriptPro Downplayed the Importance of Slot-Checking Sensors by Stressing Patient-Specific Collation As a Central Purpose of the Invention

On December 30, 2011, Innovation moved for summary judgment on the grounds that the asserted claims of the '601 patent lack written description support for a collating unit that automatically stores prescription containers without using sensors. (A2325, A2365.) Innovation relied on various aspects of the specification that describe the integral role sensors play in storing prescription containers in the holding areas of the collating unit, and yet sensors were not claimed. (A2365-A2370.) The district court agreed and granted summary judgment invalidating ScriptPro's asserted claims. (A5140, A5145-A5151.) ScriptPro appealed, and the arguments it made on that first appeal laid the groundwork for this second appeal.

During that first appeal, ScriptPro downplayed the importance of the slot-checking sensors because, according to ScriptPro, they were not integral to the central purpose of the invention. ScriptPro argued that "[t]he benefits and purposes of the invention do not relate to sensors or sensing technology." (A5231.) ScriptPro pointed out that the claimed invention addressed a number of problems in the prior art, including storing multiple containers in a holding area and storing "based on an algorithm keyed to a patient's name, rather than a prescription number." (A5235-A5236.) ScriptPro emphasized that:

> As a result of these advances (and others), the patent's inventive collating unit is operable to "associate a stored container with a patient based on the patient's name" and automatically "collate and store multiple containers for a patient within the same area," allowing for easier and more accurate retrieval of a patient's prescription containers.

(A5236.)  ScriptPro argued that sensors functioned only to determine the presence of a container within the collating unit and therefore were not integral to the invention's primary goal of patient-specific storage and collation because the collating unit "must know exactly where *a specific patient's* prescription containers are at all times."  (A5253 (emphasis in original).)  Because sensors do not determine the identity of a container, "sensors cannot provide the unique information required in order for the system to know where a specific patient's prescription containers are located."  (A5253.)  ScriptPro characterized the reason for the invention as having little, if anything, to do with sensors because "the invention's goal of collating and storing multiple prescription containers for specific patients can be—and is—accomplished without the use of sensors."  (A5258.)

ScriptPro's reply brief continued to emphasize the invention's goal of patient-specific collation and storage.  ScriptPro reiterated that a primary goal of the invention is "to 'associate a stored container with a patient'" and therefore "the invention's storage of containers is patient-specific," so "the claimed collating unit

- 7 -

must know exactly where a specific patient's containers are located at all times." (A5321.)  Again, ScriptPro argued that "the invention's goal" is "to 'associate a stored container with a patient based on the patient's name' and then 'collate and store multiple containers for a patient within the same area.'"  (A5331, A5336.)

On appeal, this Court summarized what ScriptPro had "stresse[d] as a central purpose of the invention described in the specification: to keep track of what slots are open and what slots are being used for a particular customer." *ScriptPro, LLC v. Innovation Assoc., Inc.*, 762 F.3d 1355, 1359 (Fed. Cir. 2014) [*ScriptPro I*].  This Court reasoned because the specification lacked sufficiently clear language limiting the invention to a collating unit with slot-checking sensors, "and what ScriptPro highlights as a central purpose of the claimed advance in technology," it could not be said as a matter of law that the asserted claims were incommensurate with what is described as the invention.  *Id.*  The Court therefore concluded that "a trier of fact could find that a skilled artisan would understand the specification to disclose a system that relies on the computer memory, without sensors, to fulfill the central purpose of keeping track of slot use by particular customers and slot availability."  *Id.* at 1361.  This Court noted, however, that "[i]t is not immediately apparent how the claim language, properly construed, requires any means of achieving that purpose."  *Id.* at 1359.

### B.    On Remand, ScriptPro Embraced the Patient-Specific Storage Functionality

On remand, Innovation again moved for summary judgment based on a lack of written description support, but this time directed to the precise issue that ScriptPro stressed and this Court acknowledged during the first appeal. (A5182-A5194.)  Innovation argued that "the claims contain no such limitation for achieving" the central purpose ScriptPro had highlighted on appeal. (A5182.) Innovation pointed out that "the specification of the '601 patent unambiguously limits the manner in which the collating unit achieves automated storage of prescription containers." (A5191.)  The specification "describes the invention as storing containers based on the availability of an open storage position and ***patient-identifying information***"; the summary of the invention states that "the present invention . . . stores prescription containers according to a storage algorithm that is dependent on a ***patient name*** and an availability of an open storage position"; and "[o]ther portions of the summary of the invention similarly emphasize ***patient-specific*** collating of prescription containers." (A5191 (emphasis added).)  After reciting numerous aspects of the specification that limit the invention to one that achieves patient-specific collation, Innovation concluded that it was entitled to summary judgment because the asserted claims "broadly claim a collating unit for 'automatically storing' absent any limitation that makes the claims commensurate with the invention that is more narrowly described in the specification." (A5192.)

In response, ScriptPro embraced the patient-specific storage functionality of the claimed invention. ScriptPro acknowledged that a central purpose of the invention is to associate a container with a patient and keep track of slot use by particular customers and slot availability. (A5353, A5358-A5359.) Instead of disputing the patient-specific storage functionality recited in the specification, ScriptPro instead chose to oppose summary judgment on two other grounds.

First, ScriptPro argued that the patent claims did not need to be limited to achieving that purpose of the invention because "a patent claim need not fulfill all of the various purposes of an invention." (A5323.) In support of this argument, ScriptPro argued that patent claims need not achieve all of a patent's purposes unless the entirety of the specification at issue unambiguously limits the invention to a particular form. (A5359.) ScriptPro did not, however, point to any alleged ambiguity in the specification reciting anything other than patient-specific collation or storage, nor did ScriptPro identify any alternative goals of the invention. (A5359-A5360.)

Second, ScriptPro embraced the invention's patient-specific storage functionality and argued that the "control system" achieves and controls "the unit's automatic and *patient-specific storage functionality*." (A5353-A5354, A5360.) ScriptPro argued that the recited "control system" includes "a computing device 92, such as a computer"; that this "computing device, in turn, 'may broadly

comprise any processor capable of being programmed'"; and that "[i]nherent in this description of the control system is its ability to store, retrieve, and process information." (A5360-A5361.) In support, ScriptPro relied on the opinion of its expert, Terry Faddis, that "memory sufficient to execute *patient-specific storage* functions is inherent in the 'computer' or 'processor' that comprises the 'control system.'" (A5362 (emphasis added).) Thus, ScriptPro argued that "the specification uniformly and repeatedly confirms that the 'control system' controls every aspect of the claimed units—including keeping track of what slots are open and what slots are being used for a particular patient." (A5361.)

In Innovation's reply (A5409-A5417), Innovation pointed out that the parties effectively agreed on the stated purpose of the invention because ScriptPro did not point out any purpose other than the central purpose it had repeatedly emphasized to the Federal Circuit and did not identify any other purpose. (A5412-A5413.) Innovation argued that ScriptPro's arguments that the "control system" recited in the claims provides means for achieving this purpose via an inherent "memory" feature, such as that allegedly found in a "computing device," contradicts the plain language of the specification and the claims.[2] (A5414-

---

[2] Indeed, the "control system" does not necessarily include a "computing device" or "memory." (A5410-A5412.) The claims themselves distinguish between a "control system" and a "computing device" inasmuch as dependent claim 21 expressly recites a "control system including a computing device from which the control system may be operated." (A80.) The specification discusses

A5417.)  And ScriptPro's reliance on an expert declaration to try to contradict the plain language of the claims and the specification was improper.  (A5417.)

The district court found that "the '601 patent's specification limits how the invention automatically stores prescription containers," but that "the claims do not limit the ways in which the prescription containers are stored.  They do not specify any type of collation or storage."  (A8.)  The court further reasoned that ScriptPro repeatedly emphasized on appeal that a central purpose of the patent is "to 'keep[] track of slot use by particular customers and slot availability.'"  (A9.)  And the court found it "disingenuous for ScriptPro to now downplay the significance of the goal" it repeatedly emphasized on appeal.  (A9.)  The court observed that, although ScriptPro argued that patient-specific storage is only one of several goals, ScriptPro did not "identify any alternate goals."  (A9.)  The district court also rejected ScriptPro's "control system" and "memory" argument because, regardless of whether the claims refer to a control system that may include memory, "they do not direct that the control system directs storage of the containers by patient name."  (A9-A10.)

As will be discussed below, ScriptPro does not now re-raise any of the arguments that it presented to the district court.  ScriptPro no longer argues that the

---

memory sparingly and in the context of preferred embodiments.  (A75-A76, at 8:62-9:11 ("The control system 28 broadly includes a computing device 92 . . . . and *preferably* also includes a memory 110 on which at least one database 112 may be stored." (emphasis added)).)

claims do not need to be limited to the central purpose. And ScriptPro does not claim that the district court erred in rejecting ScriptPro's "control system" and "memory" arguments, or the related declaration of Dr. Faddis. The district court's findings on those issues are therefore unchallenged and not at issue on appeal. ScriptPro instead lodges new arguments that it never presented to the district court for its consideration.

## II. The Specification Unambiguously Limits the Invention to a Patient-Specific Organization Scheme That Uses Patient-Identifying Information

### A. The Background of the Invention Disparages Prior Art Organizational Schemes That Lacked Patient-Specific Collation

The background of the invention recognizes that automated control centers "operable to automatically store the containers exiting the ADS" were known in the art. (A72-A73, at 2:66-3:1.) But the automated control centers in the prior art "store the container based on a prescription number associated with the container, as opposed to storing the container based on a patient name for whom the container is intended." (A72-A73, at 2:66–3:10.) The background of the invention explains the inefficiencies of those prior art organizational schemes:

> Busy pharmacies often do not have enough pharmacists, technicians, or other operators available to retrieve and store the vials and packages, i.e. the prescription containers, as quickly as an ADS outputs the containers. It is therefore common for prescription containers to be lined up on an outfeed conveyor of the ADS, waiting for retrieval and storage by the operator. When the operator

> wishes to retrieve a particular patient's container, the operator must look at and read a label of each container on the outfeed conveyor until finding the correct container. This method of retrieving prescription containers is time-consuming and presents a possibility for error, since the operator may easily pick up the wrong container in search of the patient's container. If the patient has several filled prescriptions corresponding to several containers, the operator must look through even more containers for the patient's containers.

(A72, at 1:31-44.) After a prescription label is stapled to the bag, the bag is stored, normally in a bin or other storage receptacle. (A72, at 2:19-28.) It can become difficult and time-consuming to find a bag for a particular patient as the bags become bunched together in the bin or are mistakenly placed out of alphabetical order. (*Id.*)

The background of the invention disparages these prior art control centers that were unable to collate based on patient-specific information:

> Unfortunately, prior art automated control centers are limited to storing only one prescription container per a slot or compartment. Additionally, prior art automated control centers store the container based on a prescription number associated with the container, as opposed to storing the container based on a patient name for whom the container is intended. This is especially inconvenient for several reasons. First, many patients now receive more than one prescription at a time, and thus, more than one prescription container will be associated with each patient. Since prior art automated control centers are only operable to store one container per a slot, an operator retrieving stored containers for a patient must retrieve containers from several different slots. Further, because the slots in which the containers for the patient

- 14 -

are stored are not necessarily next to each other, or even proximate to each other, the operator is required to look for containers at several various locations within the storage unit.

Second, prior art automated control centers are only operable to store the container for the patient under the prescription number, and thus, any indicator for the slot in which the container is stored only displays the prescription number. The operator is then required to cross-reference the prescription number to the patient name by either viewing the prescription number on paperwork for the prescription, viewing the prescription number on the indicator for the slot, and determining if the numbers match, or viewing the prescription number on a display, such as a computer monitor, and matching the prescription number to the number on the indicator. This is time-consuming and prone to error since the operator must match prescription numbers that are often several digits in length.

(A73, at 3:4-35.)

## B. The Specification Repeatedly Discloses Patient-Specific Collation

The specification repeatedly references the broadest form of the invention as a collating unit that stores and keeps track of prescriptions and available holding slots based on patient-specific information. The summary of the invention explains that the present invention solves the above-described problems in the prior art by providing a collating unit that stores prescription containers "according to a storage algorithm that is dependent on a patient name for whom a container is intended and an availability of an open storage position in the collating unit." (A73, at 4:22-25.) The operator inputs patient-identifying information into the

control system "to facilitate locating stored containers in the collating unit." (A74, at 5:28-32.) The selected holding area is dependent on whether previous containers for the patient have been stored in the collating unit and not yet retrieved:

> If containers for the patient have already been stored and not yet retrieved, the control system determines if the holding area has space to store the additional container. To accomplish this, the sensor positioned at the open end of the holding area determines if the holding area is full. If the holding area is not full, the container is stored in the holding area. If the holding area is full, or if no container for the patient has been stored and not yet retrieved, the control system selects the first empty holding area for storage of the container.

(A74, at 5:47-59.) And the operator can retrieve containers by inputting patient-identifying information. (A74, at 6:11-14.) This automated storage feature "significantly reduces the time necessary to manually retrieve and store the containers." (A74, at 6:25-27.) The collating unit is "also operable to associate a stored container with a patient based on the patient's name. Further, the collating unit of the present invention can collate and store multiple containers for a patient within the same area." (A74, at 6:35-39.)

The detailed description of the preferred embodiments explain that the collating unit automatically stores filled prescription containers "based on an organizational scheme that accounts for identifying information of the container,

such as a patient name for whom the container is intended." (A75, at 7:26-32.) It

details this process:

> Initially, a script is entered into the control system **90** of
> the ADS **14** by a pharmacist, technician, or other
> operator. When entering the script, the operator
> preferably also enters identifying information for the
> script, such as a patient's name. Additionally, the script
> is assigned a script number, wherein the script number
> identifies the particular patient name and medicament to
> be dispensed.

(A77, at 11:44-50.)

The specification describes the process for container storage. When the

collating unit is initially empty, the control system instructs the first container

exiting the ADS to be stored in the first available holding area. (A77, at 12:18-20.)

This is illustrated in Figure 7, which requires determining the availability of an

open storage position:



(A69.)

The process of storing a second container depends on whether the second

container is for the same patient as the first container. (A77-A78, at 12:63-13:6.)

If the second container is not for the same patient as the first container, "the control system 28 ***will not store*** the second container in the same holding area 22 in which the first container was stored, since the control system 28 will not store containers for different patients in the same holding area." (*Id.* (emphasis added).)  In that circumstance, the control system instructs the second container to be stored in the first empty holding area.  (*Id.*)  This process is depicted in Figure 8:



FIG. 8

(A70.)

### C.    The Claims Do Not Include Any Component With "Memory" and ScriptPro Does Not Argue Otherwise

In the first appeal in this case, this Court found that "a trier of fact could find that a skilled artisan would understand the specification to disclose a system that relies on the computer memory, without sensors, to fulfill the central purpose of keeping track of slot use by particular customers and slot availability." *ScriptPro I*, 762 F.3d at 1361.  This Court noted, however, that "[i]t is not immediately apparent how the claim language, properly construed, requires any means of achieving that purpose." *Id.* at 1359.  In Innovation's second motion for summary judgment, the trial court rejected ScriptPro's only argument for why ScriptPro's claims require memory.  (A5-A10.)  ScriptPro does not challenge that conclusion on this appeal, and does not put forth any argument for how its patent claims require any component with memory.

Indeed, the asserted claims do not mention "memory" and the patent specification mentions memory as an optional component in the preferred embodiments.    The detailed description, in describing the first preferred embodiment, notes that "[t]he control system 28 broadly includes a computing device 92 . . . . The computing device 92 may broadly comprise any processor capable of being programmed and ***preferably also includes a memory*** 110 on which at least one database 112 may be stored."  (A75, at 8:62-9:11 (emphasis added).)  Another portion of the detailed description similarly notes that:

- 19 -

> As containers are stored in the collating unit 10, the control system 28 of the collating unit 10 stores such information in the memory 110. An operator of the collating unit 10 may at any time determine which containers are currently stored in the collating unit 10 and the location of the containers in the collating unit 10.   Further, the control system 28 stores the identifying information for each stored container in the memory 110.

(A77, at 12:45-52.)

Furthermore, the claims themselves distinguish between a computing device and a control system.   Dependent claim 21, which is not asserted in this case, expressly claims "[t]he collating unit as claimed in claim 20, the control system including a ***computing device*** from which the control system may be operated . . . ."  (A80, A83 (unaltered during reexamination) (emphasis added).)   Unlike claim 21, the asserted claims 1, 2, 4, and 8 do not mention a "computing device."   (A79, A83.)

## SUMMARY OF ARGUMENT

ScriptPro's arguments on appeal bear no resemblance to the arguments it presented to the district court.   ScriptPro chides the district court for having "missed," "failed to appreciate," and "misinterpreted" ScriptPro's arguments and blames the district court for its "myopic focus on storage 'by patient name.'"   But ScriptPro did not advance any of the same arguments before the district court that it now advances here.   In response to Innovation's argument that both the

specification and ScriptPro's "central purpose" argument require "patient-specific collating" (A5191), including repeatedly highlighting various aspects involving "patient name" (A5186-A5189 ¶¶ 5, 8, 11), ScriptPro made no effort to dispute this characterization and instead chose *not* to argue semantics about whatever types of patient identifiers may be at issue. Instead, ScriptPro embraced the patient-specific functionality and insisted that it was somehow met by the control system. ScriptPro has now abandoned that argument on appeal in favor of arguments that ScriptPro did not raise before the district court. ScriptPro's efforts to blame the district court for its own strategic decisions are therefore not well taken.

Regardless, ScriptPro's newfound arguments are without merit. The specification makes clear that the invention's technological advance is the efficiencies gained by using patient-identifying information to collate and store containers. This comports with ScriptPro's representations to this Court that a "central purpose of the invention" is keeping "track of what slots are open and what slots are being used for a particular patient." This is the outer limit of any invention ScriptPro may have possessed when the patent was filed, yet the claims do not limit ScriptPro's patent monopoly in this fashion. This is the very type of overreaching prohibited by the written description requirement.

ScriptPro revived its patent from invalidity on the first appeal by stressing the central purpose of the invention, but is now at a loss for what, in its patent

claims, actually achieves this purpose. ScriptPro once again argues that its claims are inherently limited to this purpose, but this time it raises a different inherency argument. Before the district court, ScriptPro argued that the "control system" inherently limits ScriptPro's claims to this central purpose, and inherently includes a "computing device" that inherently includes the "memory" necessary to do so. The trial court rejected that argument and ScriptPro does not argue this was error. ScriptPro now argues for the first time on appeal that the claimed "collating unit" inherently includes (or through claim construction should include) the necessary limitation. Again, these arguments are waived because they were never raised before the trial court, but they find no support in the patent regardless.

Similarly, ScriptPro's argument that the as-filed original claims provide sufficient written description support is another issue that was not raised before the district court. The fact that ScriptPro raises this issue now is thematic of its entire approach to this appeal. During the prior appeal this Court told ScriptPro that it could re-raise its "original claims" argument in further proceedings. Instead of doing so, ScriptPro chose *not* to raise this argument for the district court to consider, but now urges this Court to reverse the district court on the grounds that this was error. Procedural improprieties aside, the lack of patient-specific collation in the original claims still does not provide sufficient written description support

because the entirety of the specification reveals that the invention is limited to patient-specific collation.

Based on the entirety of the patent, no reasonable jury could find that the inventors were in possession of a collating unit that organized prescription containers exiting the ADS in any way other than by patient. ScriptPro has improperly claimed a broader invention and therefore the asserted claims are invalid. Innovation therefore requests that this Court affirm the district court's decision.

## ARGUMENT

### I. Legal Standards

#### A. Standard of Review

"A district court's grant of summary judgment of invalidity for lack of written description is reviewed de novo." *Atl. Research Mktg. Sys. v. Troy*, 659 F.3d 1345, 1353 (Fed. Cir. 2011). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Although compliance with the written description requirement is a question of fact, this issue is amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party." *Atl. Research Mktg. Sys.*, 659 F.3d at 1353 (quotation omitted).

## B.    Legal Standard for Lack of Written Description

Title 35 U.S.C. § 112, ¶ 1 requires the specification to "contain a written description of the invention."  Under this requirement, the specification "must clearly allow persons of ordinary skill in the art to recognize that the inventor invented what is claimed." *Ariad Pharms., Inc.*, *v. Eli Lilly & Co.* 598 F.3d at 1336, 1351 (Fed. Cir. 2010) (internal quotations and alterations omitted).  The test for sufficiency is whether the disclosure "reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Id.*  Possession is shown by describing the invention with all of its limitations using "such descriptive means as words, structures, figures, diagrams, formulas, etc., that fully set forth the claimed invention." *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997).  "It has long been the case that a patentee 'can lawfully claim only what he has invented and described, and if he claims more his patent is void.'" *Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.*, 541 F.3d 1115, 1122 (Fed. Cir. 2008) (quoting *O'Reilly v. Morse*, 56 U.S. 62, 121 (1853)).

"The hallmark of written description is disclosure" and therefore the test requires "an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art." *Ariad Pharms., Inc.*, 598 F.3d at 1351.  "A patent can be held invalid for failure to meet the written description

requirement based solely on the face of the patent specification." *Centocor Ortho Biotech, Inc. v. Abbott Labs.*, 636 F.3d 1341, 1348 (Fed. Cir. 2011) (reversing jury verdict of infringement where patent was invalid for lack of written description). "After all, it is in the patent specification where the written description requirement must be met." *Univ. of Rochester v. G.D. Searle & Co., Inc.*, 358 F.3d 916, 927 (Fed. Cir. 2004) (affirming summary judgment of invalidity for lack of written description).

**II.   The District Court Properly Determined That the Asserted Claims, Which Lack Any Particular Type of Organizational Scheme, Are Not Supported by the More Limited Patient-Specific Collation Described in the Specification**

**A.   This Court's Precedent Prohibits Broad Claims That are Not Commensurate With the Invention That is More Narrowly Described in the Specification**

"[A] broad claim is invalid where the entirety of the specification clearly indicates that the invention is of much narrower scope." *Cooper Cameron Corp. v. Kvaerner Oilfield Prod., Inc.*, 291 F.3d 1317, 1323 (Fed. Cir. 2002) (citing *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473 (Fed. Cir. 1998)). For example, in *Gentry Gallery*, this Court found the asserted claims invalid where the written description described a specific location of a control console on a reclining sofa, but the broad patent claims were not limited to this location of the console. 134 F.3d at 1478-79. The written description clearly identified the console as the only possible location for the controls, the only discernible purpose for the console was

to house the controls, and locating the controls anywhere but on the console was outside the stated purpose of the invention. *Id.* at 1479. Thus, the written description "unambiguously limited the location of the controls to the console." *Id.* at 1480.

Likewise, in *Lizardtech, Inc. v. Earth Resource Mapping, Inc.*, the specification taught only one way of creating a seamless discrete wavelet transform ("DWT") by maintaining updated sums of DWT coefficients, and yet the claim at issue contained no such requirement. 424 F.3d 1336, 1344-45 (Fed. Cir. 2005). This Court found the claim invalid for lack of written description support, holding "the description of one method for creating a seamless DWT does not entitle the inventor of the [asserted] patent to claim any and all means for achieving that objective." *Id.* at 1346; *see also ICU Medical, Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1377-79 (Fed. Cir. 2009) (affirming summary judgment that claims omitting a "spike" limitation were invalid because a person of skill in the art would not have understood the inventor to have invented a spikeless medical valve); *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1158-59 (Fed. Cir. 1998) (finding no support for claims to a generically shaped cup where the specification described the invention as a conical-shaped cup, distinguished prior art that encompassed additional shapes as inferior, and touted the advantages of the conical-shaped cup).

### B.    The Entirety of the Specification Indicates That Patient-Specific Collation is An Essential Part of the Invention

The specification of the '601 patent unambiguously describes a collating unit in which patient-specific collation is essential to the invention.  ScriptPro has repeatedly stressed, embraced, and acknowledged that a central purpose of the '601 patent is "to 'keep track of slot use by particular customers and slot availability.'" (ScriptPro Br. at 19 ("These observations are fair as far as they go ….").)  Indeed, during the first appeal, ScriptPro represented to this Court that a "central purpose of the invention" is keeping "track of what slots are open and what slots are being used for a particular customer." *ScriptPro I*, 762 F.3d at 1359.

The specification plainly emphasizes patient-specific collating as the invention's improvement over the prior art: "prior art automated control centers store the container based on a prescription number associated with the container, as opposed to storing the container based on a patient name for whom the container is intended."  (A72-73, at 2:66-3:10.)  It disparages the prior art for failing to organize containers by patient as "especially inconvenient for several reasons," including (1) because "many patients now receive more than one prescription at a time . . . the operator is required to look for containers at several various locations within the storage unit," and (2) the operator is "required to cross-reference the prescription number to the patient name," which "is time-consuming and prone to error."  (A73, at 3:11-21, 3:26-34.)

Every example in the specification discusses collating by patient.  The first preferred embodiment "will not store containers for different patients in the same holding area 22."  (A78, at 13:3-4.)  The detailed description initially mentions that the collating unit automatically stores filled prescription containers exiting the ADS "based on an organizational scheme that accounts for identifying information of the container, such as a patient name for whom the container is intended or a prescription number of the container."  (A75, at 7:29-32.)  But the description of that same embodiment further explains that the "script number" on a container "identifies the particular patient name and medicament to be dispensed."  (A77, at 11:48-50.)  It later unequivocally states that "the control system 28 *will not store* containers for different patients in the same holding area 22."  (A78, at 13:2-4 (emphasis added).)  So even if a script number is one input, that prescription is still correlated to some type of patient identifier.  That same embodiment explains that, as a benefit of the invention, "[w]hen the operator desires to retrieve a container for a patient, the operator may locate the correct holding area 22 storing the prescription containers for the patient."  (A78, at 13:57-60.)

The second preferred embodiment also discusses organizing and retrieving containers by patient.  It states that "[t]he prescription containers for the patient are then generally grouped together for easy retrieval by the operator."  (A79, at 15:4-6.)  Containers are transported in a way that is "substantially similar to the

collating unit 10 of the first embodiment, and the prescription vials and packages for each patient may be routed to the same holding area 22." (A79, at 15:10-13.)

### C.  ScriptPro's Overly Broad Claims Have Unfair Breadth That the Written Description Requirement is Designed to Prevent

The claims do not include any component for patient-specific collation. This Court previously expressed the concern that "[i]t is not immediately apparent how the claim language, properly construed, requires any means of achieving [the agreed-upon] purpose." *ScriptPro I*, 762 F.3d at 1359. Nothing in the claims limits the collating unit to the patient-specific collation demanded by the specification and identified by ScriptPro as the central purpose of the invention. The asserted claims only require a frame, holding areas, guide arms, conveyors, a base, and a control system for controlling operation of the guide arms and conveyors. (A79: A83.) As such, the claims are broad enough to cover innovations that the entirety of the specification clearly indicates were not in the patentee's possession, including covering disparaged prior art.

### 1.  The Breadth of the Claims is Not Commensurate With the Contribution to the Field of the Invention

"Requiring a written description of the invention limits patent protection to those who actually perform the difficult work of 'invention'—that is, conceive of the complete and final invention with all its claimed limitations—and disclose the fruits of that effort to the public." *Ariad Pharms., Inc.*, *v. Eli Lilly & Co.* 598 F.3d

at 1336, 1351 (Fed. Cir. 2010). "[T]he purpose of the written description requirement is to 'ensure that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described in the specification.'" *Id.* (quoting *Univ. of Rochester*, 358 F.3d at 920). It is part of the "quid pro quo" grant of the patent and ensures that the public receives meaningful disclosure in exchange for being excluded from practicing an invention for a period of time. *Id.*

Here, ScriptPro's overly broad claims are not commensurate with the inventors' contribution to the field of the invention, and therefore they achieve what the written description requirement is designed to prevent. ScriptPro's specification discloses a collating unit that organizes prescription containers by patient in order to ease the task of retrieval by the operator. Yet the claims impermissibly foreclose organizational schemes beyond those possessed by the inventor. The claims broadly encompass endless types of collation and storage. They cover, for example, collation and storage by type of medicament, by container size or shape, by pick-up time, by due date, by urgency flags, or by some other complicated algorithm that might meet the evolving needs of the industry. Yet the inventors made no such contribution to the field of the invention. As such, the claims' literal breadth is contrary to the purpose of the written description requirement.

### 2.    The Claims are So Broad That They Cover Prior Art the Inventors Disparaged

Indeed, the claims are so broad that they cover disparaged prior art.  In *Tronzo*, this Court held a patent claim lacked written description for a claim broad enough to encompass prior art that the specification "specifically distinguished" as "inferior."   156 F.3d at 1159.   Here, too, nothing would stop ScriptPro from accusing a collating unit that has all of the recited components, but organizes containers "based on a number associated with a container rather than an identifier associated with the relevant patient or customer."  (ScriptPro Br. at 13.)  Yet the patent specification expressly disparages this practice in the prior art (A73, at 3:4-10), which even ScriptPro acknowledges (ScriptPro Br. at 13).

The facts of this case are akin to those in *Maytag Corp. v. Electrolux Home Products, Inc.*, in which the district court applied *Tronzo* to grant summary judgment for lack of written description and was affirmed by this Court on appeal. 448 F. Supp. 2d 1034 (N.D. Iowa 2006), *aff'd*, 224 Fed. Appx. 972 (Fed. Cir. 2007).  There, the district court found that "the description of the [asserted patents] described only 'teardrop-shaped grooves,' asserts that such grooves have various advantages . . . and never attempts to identify any other, equally functional shapes or to talk in terms of a range of shapes."  *Id*. at 1075.   That court further determined that "[e]xpert opinions to the effect that 'teardrop-shaped grooves' inherently disclosed grooves of other shapes, or no groove at all, fail to create a

genuine issue of material fact" because "there is no support *at all* in the record for reading the description to support such generic claims." *Id.* (emphasis in original). The court thus invalidated several claims "which do not have a 'teardrop-shape' limitation on the 'grooves,' if they require 'grooves' at all." *Id* at 1069.

This case is materially indistinguishable. ScriptPro's specification describes only patient-specific identifying information and describes the advantages of using such information to achieve patient-specific storage and collation. Yet ScriptPro never attempts to identify any other, equally functional identifying information. As in *Maytag*, the specification provides no support for ScriptPro's generic claims. Because ScriptPro's claims are not limited to patient-identifying information and in fact do not mention identifying information "at all," *id.* at 1069, ScriptPro's claims are likewise invalid.

## III. ScriptPro's Newfound Arguments, Not Raised Before the District Court, Do Not Rectify the Deficiencies the District Court Properly Identified

This Court forewarned ScriptPro that "[i]t is not immediately apparent how the claim language, properly construed, requires any means for achieving" the invention's central purpose. *ScriptPro I*, 762 F.3d at 1359. Yet ScriptPro never provided argument or evidence to the district court, either during claim construction or in summary judgment briefing, to debate what particular types of patient-specific collation are disclosed in the specification or to advocate for a

narrowing interpretation of "collating unit" that requires a component that collates based on patient-specific information.  As such, ScriptPro has waived the arguments it now raises on appeal.  *See Israel Bio-Eng'g Project v. Amgen, Inc.*, 475 F.3d 1256, 1265 (Fed. Cir. 2007) (issue not raised in trial court is waived on appeal); *Cemex, S.A. v. United States*, 133 F.3d 897, 902 (Fed. Cir. 1998) ("Ordinarily, when a party fails to make an argument in proceedings below, the argument is waived, and we will not hear it on appeal."); *Sage Prods, Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997) ("With a few notable exceptions . . . appellate courts do not consider a party's new theories, lodged first on appeal.").

Regardless, ScriptPro's argument that the district court committed reversible error is a parade of flawed logic.  First, ScriptPro attempts to manufacture a false distinction (between patient name vis-à-vis some other type of patient-identifying information) by cherry-picking language from the specification divorced from its overall context in the entirety of the specification.  Second, ScriptPro suggests that the district court should have, *sua sponte*, concluded that the recited "collating unit" is sufficient even though it lacks the type of collation disclosed in the specification.  ScriptPro then compounds these two fallacies to try to argue that there is no discrepancy between the specification and the asserted claims, thus distinguishing Federal Circuit precedent.  These arguments fail on all fronts.

**A.** **ScriptPro Embraced the Invention's Patient-Specific Storage Functionality Without Debating Immaterial Semantics About Storage by "Patient Name" or Some Other Patient Identifier**

ScriptPro's threshold argument is that the district court erred by limiting the invention to storage by "patient name" because, according to ScriptPro, this is merely a preferred embodiment. To advance this argument, ScriptPro is forced to mischaracterize and criticize the district court for having somehow improperly focused on semantic distinctions regarding patient-identifying information when ScriptPro itself did not bother to address any such distinctions until now. Innovation's opening summary judgment brief focused on the central-purpose-of-the-invention argument that ScriptPro stressed and this Court acknowledged during the first appeal (A5182), and cited passages from the specification reciting storage by "patient-identifying information," a storage algorithm that is dependent on "patient name," and other portions of the specification that emphasize "patient-specific collating" (A5191). In response, ScriptPro embraced the "patient-specific storage functionality" (A5353-A5354, A5360, A5362), and chose to frame its arguments around that characterization, rather than arguing semantics about any particular type of patient identifier. As such, ScriptPro cannot now complain about the district court's conclusion that ScriptPro's claims are limited to organizing containers by patient because this conclusion was based on ScriptPro's own representations to the court.

In any event, the distinction is immaterial because ScriptPro fails to show that its claims impose any limitation on the type of collation that is commensurate with the specification, whether by operability to collate based on patient name or some other type of patient-identifying information. *See Wang Labs., Inc. v. Mitsubishi Electronics Am., Inc.*, 103 F.3d 1571, 1581 (Fed. Cir. 1997) ("[W]e may affirm a district court's action where the record offers a route to affirm that neither expands nor contracts the rights established for either party by the judgment."). ScriptPro admits that the district court's reasoning that one of the invention's central purposes is to collate and store prescriptions by patient and ScriptPro's own argument that a central purpose of the invention is to keep track of slot use by particular customers are both "fair" observations. (ScriptPro Br. at 19, 24 (repeatedly acknowledging the need to keep track of slot use by particular customers).) And ScriptPro has repeatedly stressed and embraced the patient-specific organization scheme as a primary goal of the invention. *See* Statement of Facts, Section I(A) & (B), *supra.*

ScriptPro's emphasis on the specification's references to broader terms like "identifying information" and qualifiers like "*such as* patient name" are unavailing because ScriptPro still fails to point to any portion of the specification that disavows the patient-specific organizational scheme that is missing from the claims. Indeed, ScriptPro emphasizes, apparently as the outer bounds of the

invention's scope, that "virtually any identifier could be used *to identify a patient's container's*—e.g., date of birth, address, the letter 'X,' or any code common to *Patient Smith's container* or keyed to *Patient Smith's prescriptions."* (ScriptPro Br. at 16 (emphasis added).)  Accordingly, every single example of an identifier ScriptPro put forth in its brief identifies a particular patient for patient-specific collation.  (*See also id.* at 24 (patient's "phone number or address"), 32 (patient's "phone number").)

And while the specification in one place mentions that the collating unit automatically stores filled prescription containers exiting the ADS "based on an organizational scheme that accounts for identifying information of the container, such as a patient name for whom the container is intended or a prescription number of the container" (A75, at 7:29-32), that embodiment later clarifies that the "script number" on a container "identifies the particular patient name and medicament to be dispensed" (A77, at 11:48-50).  It later unequivocally states that "the control system 28 *will not store* containers for different patients in the same holding area 22" (A78, at 13:2-4) and that, as a benefit of the invention, "[w]hen the operator desires to retrieve a container for a patient, the operator may locate the correct holding area 22 storing the prescription containers for the patient." (A78, at 13:57-60.)

### B. The Claimed "Collating Unit" Does Not Require the Patient-Specific Collation That Is An Essential Part of the Invention

Next, ScriptPro characterizes the district court as having ignored the fact that the asserted claims are directed to a "collating unit." Not so. The district court acknowledged that the claims are directed to collation and storage, but properly recognized that the claims are inadequate because "[t]hey do not specify any type of collation or storage." (A8.) ScriptPro now argues for the first time on appeal that the mere term "collating unit," which appears in the preambles of the asserted claims, sufficiently limits the claims to the central purpose of the invention. ScriptPro further argues that the term "collating unit" inherently includes the necessary scheme for ordering or arranging or, in the alternative, that this Court should now construe "collating unit" to include such a limitation as a matter of law. (ScriptPro Br. at 36, n.6.) Once again, ScriptPro did not raise any of these arguments to the district court, either during claim construction or summary judgment briefing.[3]

---

[3] Dr. Faddis's declaration that ScriptPro submitted during the second summary judgment briefing was silent on what a skilled artisan would understand "collating unit" to mean in the context of ScriptPro's patent.

- 37 -

1.    **Before the District Court, ScriptPro Chose to Argue That the Patient-Specific Storage Functionality is Inherent in Memory, Which is Inherent in a Computing Device, Which is Inherent in the Recited Control System**

During the first appeal, ScriptPro argued that sensors are optional because a "central purpose of the invention" is to keep "track of what slots are open and what slots are being used for a particular customer." *ScriptPro I*, 762 F.3d at 1359-61. This Court, in accepting ScriptPro's argument, held that a trier of fact could find that a skilled artisan would understand the specification to describe "a system that relies on computer memory, without sensors" that could "fulfill the central purpose" of the invention. *ScriptPro I*, 762 F.3d at 1361. Importantly, however, the Court noted that "[i]t is a separate question whether the claims *claim* such reliance." *Id.* (emphasis in original).

Here, the claims do not recite "memory." Nor do they include any component that necessarily relies on computer memory to achieve the agreed purpose. For instance, the specification only touches on computer memory briefly, as a component of a preferred embodiment of the unclaimed "computing device." Indeed, according to the specification "[t]he computing device 92 may broadly comprise any processor capable of being programmed and *__preferably also includes a memory 110__* on which at least one database 112 may be stored." (A77, at 11:6-8.) A computing device, let alone one including memory, does not appear in the asserted claims. ScriptPro's inherency argument fails for at least this reason.

- 38 -

Further, despite this Court's warning that ScriptPro needed to show that its patent claims claim reliance on computer memory, ScriptPro tried, failed, and gave up on making such a showing. ScriptPro has now abandoned the argument it made on remand that memory is an inherent part of a "computer processor," which ScriptPro also argued is an inherent component of the claimed "control system." (A5354, A5360-A5364.) The district court flatly rejected this double "inherency" argument as insufficient to bring the claims within the written description requirement. (A9-A10.) ScriptPro does not argue that this was error.

ScriptPro has now apparently accepted that the "control system" cannot be the component that includes "memory," and has never even tried to explain which other component necessarily satisfies that role. Nor could it. Indeed, the claims themselves distinguish between a collating unit and a collating unit that includes a computing device that further includes memory. (*See* A80 (claim 21 reciting a "collating unit" with a "control system including . . . a computing device from which the control system may be operated")).

At bottom, it is telling that even ScriptPro, in multiple bites at the apple, has been unable to determine what claimed component achieves the purpose of the invention or whether that component must include memory, as ScriptPro acknowledged on remand. So, too, a skilled artisan could only conclude that

ScriptPro was never in possession of the full scope of what it has tried to claim the right to exclude, and has overreached beyond the inventor's contribution.

### 2.    ScriptPro's New Argument That "Collating Unit" Alone Sufficiently Limits the Claims Was Not Before the District Court and is Unsupportable Regardless

ScriptPro, perhaps finally recognizing that its claims must be limited to the central purpose of the invention and that its claims are not so limited, now improperly advances—for the first time on appeal—a new theory for why the asserted claims are *implicitly* so limited.  Specifically, ScriptPro relies on a common dictionary definition to argue that the ordinary meaning of collate "necessarily implies a scheme for ordering or arranging," and that the claim term "collating unit" therefore "does limit the ways in which the invention stores prescription containers."  (ScriptPro Br. at 36.)  Once again, ScriptPro waived this argument by not raising it to the trial court.

But even accepting this newly proposed "ordinary meaning" of "collating unit," ScriptPro's patent still fails the written description requirement.  Even ScriptPro's "ordinary" meaning of collate does not describe a "collating unit" that collates based on *the identity of a patient* using *patient-identifying information*, as would be required for the patent to be valid. *See Cooper Cameron Corp. v. Kvaerner Oilfield Products, Inc.*, 291 F.3d 1317, 1323 (Fed. Cir. 2002) ("[A] broad claim is invalid [for lack of written description] when the entirety of the

specification clearly indicates that the invention is of a much narrower scope."). Indeed, the dictionary definition ScriptPro relies on as the **sole** support for the "ordinary meaning" of the term collating unit does not include any limitation on what particular assembling scheme is to be used or how it is to be accomplished. (ScriptPro Br. at 35.) The question on appeal is not whether the plain and ordinary meaning of the claim language necessitates a method of arranging in a proper order. Rather, the question is whether the asserted claims include limitations requiring a collating unit operable to store prescriptions based on *patient-identifying information*. They do not.

Thus, ScriptPro's reliance on *Vizio, Inc. v. Intl. Trade Comm.*, 605 F.3d 1330 (Fed. Cir. 2010), and other cases—cited for the proposition that a preamble may be limiting—is misplaced. (*See* ScriptPro Br. at 29-31.) For example, in *Vizio*, the Court held that "for decoding" language, which *already* appeared in the preamble of the asserted claim, was limiting because "'decoding is the essence or a fundamental characteristic of the claimed invention." *Vizio, Inc.*, 605 F.3d at 1340-41. To the contrary, here the preamble does not include any language requiring that the central purpose of the invention be achieved. Thus, even if the phrase "collating unit" in the preamble were limiting, it would only be limited in the manner in which it has already been construed. ScriptPro has not provided any

evidence, either by way of expert opinion or extrinsic evidence, demonstrating otherwise.

### 3. Despite This Court's and Innovation's Express Invitation Regarding Claim Construction, ScriptPro Chose Not to Seek a Revised Claim Construction

ScriptPro also argues for the first time on appeal, in a footnote, that the Court should construe the term "collating unit" to impose limitations and save ScriptPro's claims. (ScriptPro Br. at 36 n.6.) This argument is doubly waived.

First, ScriptPro never raised any relevant claim construction argument in the district court. ScriptPro already argued for a broader claim construction during the *Markman* phase of this case. For example, ScriptPro asked that the phrase "collating unit for automatically storing prescription containers dispensed by an automatic dispensing system" be construed as "a part of an apparatus that assembles something in order capable of automatically storing prescription containers dispensed by an automatic dispensing system." (A0264.) This proposed construction of "collating unit" was even broader than that ScriptPro advocates now. After claim construction, Innovation left the door open for rolling claim construction, but ScriptPro argued that "the claims have already been construed and took the position that "no further constructions are necessary." (A2622, n.1.) On appeal, this Court expressly signaled that the proper claim construction may be intertwined with the written description issue. *ScriptPro I,*

762 F.3d at 1359 ("It is not immediately apparent how the claim language, *properly construed*, requires any means of achieving that purpose" (emphasis added).). Yet, on remand, ScriptPro chose not to raise any claim construction arguments in opposition to Innovation's summary judgment motion. As such, those arguments are waived.[4] *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1296 (Fed. Cir. 2005) ("[P]resenting proposed claim constructions which alter claim scope for the first time on appeal invokes the doctrine of waiver as to the new claim construction.")

Second, ScriptPro does not properly raise this issue on appeal. ScriptPro merely raises this argument in a footnote, which is insufficient. *See Otsuka Pharm. Co., Ltd. V. Sandoz, Inc.*, 678 F.3d 1280, 1294 (Fed. Cir. 2012) ("Arguments raised only in footnotes . . . are waived."); *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319-20 (Fed. Cir. 2006) (same).

This argument fails on the merits, too. Even if the Court adopted what appears to be ScriptPro's proposed construction for "collating unit," the claims would still be silent on whether the collating unit organizes containers for a particular customer based on patient "identifying information," as opposed to

---

[4] *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1274 (Fed. Cir. 2012), which ScriptPro cites in a footnote, is immaterial to the issue of waiver. There, this Court simply noted that "we may depart from the district court and adopt a new construction on appeal." *Id.* But here the district court had no opportunity to adopt the construction ScriptPro now appears to advocate because ScriptPro never presented it before this appeal.

prescription type, pickup time, or some other identifier that does not identify a specific patient. The very portions of the specification ScriptPro relies on show that a person skilled in the art would not understand "collate" to mean arranging for "a particular customer" using patient "identifying information." If that were the case, then the phrase "collate multiple containers for a patient in one holding area" would be redundant. (*See, e.g.*, A73 at 3:66-4:1.) ScriptPro provides no explanation as to why any relevant construction would be proper given this Court's repeated warnings against importing limitations from the specification into the claims. *See Phillips v. AWH Corp.*, 415 F. 3d 1303, 1319-20 (Fed. Cir. 2005).

## IV.   ScriptPro Failed to Raise Its "Original Claims" Argument Before the District Court, and the Original Claims are Insufficient in Any Event

ScriptPro argues that the as-filed, original claims are part of the specification, and thus save the asserted claims from invalidity. But this argument is meritless for at least two reasons.

First, once again, ScriptPro did not raise this argument before the district court. During the prior appeal, ScriptPro had argued that the originally filed claims demonstrate the adequacy of the written description and Innovation argued that ScriptPro had waived the argument by not sufficiently raising it before the district court. *ScriptPro I*, 762 F.3d at 1361. This court declined to decide the issue but specifically advised ScriptPro that "[r]eliance on the original claims will be available to ScriptPro in further proceedings on this issue." *Id.* at 1361-62.

Despite this Court's express invitation to ScriptPro to present this argument to the district court for its consideration, on remand ScriptPro chose not to re-raise this argument. (A5353-A5367.) As such, ScriptPro waived this argument. *See Israel Bio-Eng'g Project v. Amgen, Inc.*, 475 F.3d 1256, 1265 (Fed. Cir. 2007) (issue not raised in trial court is waived on appeal); *Cemex, S.A. v. United States*, 133 F.3d 897, 902 (Fed. Cir. 1998) ("Ordinarily, when a party fails to make an argument in proceedings below, the argument is waived, and we will not hear it on appeal."); *Sage Prods, Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997) ("With a few notable exceptions . . . appellate courts do not consider a party's new theories, lodged first on appeal.").

Second, this Court, during the first appeal, noted that the original claims are only relevant "[w]hen a specification is ambiguous about which of several features are stand-alone inventions." *ScriptPro I*, 762 F.3d at 1361. This Court observed that "[o]riginal claims are part of the specification and in *many* cases will satisfy the written description requirement." *Id.* (citing *Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.*, 635 F.3d 1373, 1380 (Fed. Cir. 2011) (emphasis added in *ScriptPro I*)). This Court further noted that the court in *LizardTech* had remarked that, although "an originally filed claim can provide the requisite written description," nothing in the asserted claim or specification in that case provided an adequate and enabling description even though that claim was

part of the original disclosure. *Id.* (citing *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1346 (Fed. Cir. 2005)).

Here, for the reasons set forth previously, the specification unambiguously describes that the invention is limited to patient-specific collation. Once again, ScriptPro's misplaced focus on collation "by patient name" (ScriptPro Br. at 45) is unhelpful because the correct question is whether the inventor disclosed any type of collating unit that could collate other than *by patient*—an issue ScriptPro failed to properly controvert on summary judgment. Nothing in the original claims or specification provides an adequate or enabling description for collation using anything other than patient-specific identifying information. To the contrary, the specification disparages other types of collation as "especially inconvenient." (A73, at 3:10-11.)

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

ScriptPro's ever-shifting arguments about how its claims allegedly satisfy the written description requirement serve to highlight their overbreadth. Throughout the course of this case, including a parallel patent reexamination, ScriptPro declined to narrow its claims to any particular type of collation. Instead, ScriptPro opted to preserve its ability to accuse other forms of collation that exceed the broadest form of the invention possessed by the inventors. ScriptPro now

argues that it would have been obvious to the public that ScriptPro's right to exclude is somehow limited through hidden meanings attached to its claim language.

Such gamesmanship falls squarely within the type of overreaching the written description requirement was designed to prevent:

> The most basic principle of patent law provides that in exchange for disclosing an invention in writing, a patentee receives a defined period of exclusivity. The bargain, however, is limited to the invention disclosed— otherwise, carefully calibrated incentives in our patent laws would skew not towards intended, actual invention, but rather towards nuanced language designed to hide caverns in which treasures might yet be discovered, inventions not yet imagined might yet be claimed. To prevent these sorts of treasure hunts, section 112 of the U.S. patent law requires that a patent's "specification shall contain a written description of the invention."

*Leveraged Innovations, LLC v. NASDAQ OMX Group, Inc.*, No. 11 Civ. 3203, 2013 WL 441051, at *1 (S.D.N.Y. Jan. 28, 2013).

ScriptPro cannot alter the scope of its patent claims at its own convenience. The asserted claims do not limit the claimed invention to patient-specific collation. And ScriptPro, despite being given myriad opportunities to try to seek a narrowing claim construction, instead chose to pursue a broad construction that is not commensurate in scope with the invention disclosed in the specification. The specification does not clearly allow persons of ordinary skill in the art to recognize

that the inventors invented collating units configured to perform all types of collation.

Innovation therefore respectfully requests that this Court affirm the district court's order granting Innovation's motion for summary judgment that claims 1, 2, 4, and 8 of the '601 patent are invalid for lack of written description support as required by 35 U.S.C. § 112, ¶ 1 and award Innovation its appeal costs.


Dated:  October 13, 2015                    Respectfully Submitted,

                                            /s/ Angel D. Mitchell
                                            B. Trent Webb
                                            Angel D. Mitchell
                                            **Shook, Hardy & Bacon, LLP**
                                            2555 Grand Boulevard
                                            Kansas City, MO  64108-2613
                                            Telephone: (816) 474-6550
                                            Fax: (816) 421-5547

                                            *Attorneys for Defendant-Appellee*
                                            *Innovation Associates, Inc.*

- 48 -

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

# CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on October 13, 2015
By:

☐    US mail
☐    Fax
☐    Hand
☒    Electronic Means
      (by email or CM/ECF)
      FedEx Overnight

| Angel D. Mitchell | /s/ Angel D. Mitchell |
|---|---|
| Name of Counsel | Signature of Counsel |

| | |
|---|---|
| Law Firm | Shook, Hardy & Bacon L.L.P. |
| Address | 2555 Grand Boulevard |
| City, State, Zip | Kansas City, Missouri 64108 |
| Telephone Number | 816-474-6550 |
| FAX Number | 816-421-5547 |
| E-mail Address | amitchell@shb.com |

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i).  The brief contains 10,425 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).  The brief was prepared using Microsoft Word 2010 in 14-point Times New Roman font.

Dated: October 13, 2015                 Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.


By:_/s/ Angel D. Mitchell_____
        Angel D. Mitchell

2555 Grand Boulevard
Kansas City, Missouri 64108-2613
Phone:  (816) 474-6550
Fax:  (816) 421-5547
e-mail: amitchell@shb.com

*Attorney for Defendant-Appellee*
*Innovation Associates, Inc.*